## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **CHAPTER 7** |
| | : | |
| **MURRAY D. LEVIN** | : | **BANKRUPTCY NO. 25-11829 (DJB)** |
| | : | |
| Debtor | : | |
| | : | |

### MOTION OF LYNN E. FELDMAN, CHAPTER 7 TRUSTEE, FOR APPROVAL OF A SETTLEMENT AGREEMENT AND MUTUAL RELEASE BETWEEN THE TRUSTEE, THE DEBTOR AND MICHELE LEVIN PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a)

Lynn E. Feldman, Chapter 7 Trustee (the "Trustee") for the estate of Murray D. Levin (the "Debtor" and "Mr. Levin"), by and through her counsel, Karalis PC, hereby moves (the "Motion") this Honorable Court for approval of a settlement agreement and mutual release (the "Agreement") between the Trustee, on the one hand, and Murray D. Levin and Michele Levin (the "Levins"), on the other hand (collectively, the "Parties"), and in support thereof, respectfully represents as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

3.      The statutory basis for the relief requested herein is 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019.

### BACKGROUND

4.      In early May 2024, the Levins opened a brokerage account with Charles Schwab & Co., Inc. (the "Account"), and placed into that Account certain funds stemming from a sale of real estate that the Levins held as tenants by the entirety.

5.    In or around early May 2025, the Levins changed the name of the Account from "MICHELE ELLYN LEVIN & MURRAY LEVIN JT TEN" to "MICHELE ELLYN LEVIN & MURRAY LEVIN TEN BY ENT."

6.    On May 8, 2025 (the "Petition Date"), Mr. Levin filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), docketed as *In re Murray D. Levin*, Chapter 7 Case No. 25-11829-DJB (the "Bankruptcy Case").

7.    On May 9, 2025, the Trustee was appointed trustee for the Estate of Mr. Levin, which appointment remains in effect.

8.    In the weeks that followed, Mr. Levin filed various amended versions of Schedule C of his bankruptcy petition.  In these filings, he claimed the funds in the Account as exempt.

9.    On July 9, 2025, counsel for the Trustee sent to Mr. Levin's bankruptcy counsel a letter asserting, among other things, that the Levins had held the money in the Account as joint tenants, and that the Levins had committed a fraudulent transfer by renaming the Account (the "July 9 Letter").

10.    On July 14, 2025, Mr. Levin, acting on the advice of his bankruptcy counsel, caused to be wired to the Trustee half of the total amount of money then in the Account, $184,427.89 (the "Funds").

11.    Shortly thereafter, the Levins retained additional counsel.

12.    On July 31, 2025, counsel for the Levins sent the Trustee's counsel a letter (the "July 31 Letter") that contested the legal bases of the July 9 Letter.

13.    The July 31 Letter noted, among other things, that the Levins at all times held the money in the Account as tenants by the entirety and that the renaming of the Account had no effect on the legal status of the money in the Account.

14.    The July 31 Letter concluded by requesting a return of the Funds.

15.    In subsequent letters exchanged among counsel, the Parties disputed these points and others.

16.    Ultimately, the Trustee declined to return the Funds and the Levins maintained their legal right to the Funds.

17.    The Parties have engaged in settlement discussions and rather than continue with protracted litigation, the Parties now desire to settle, compromise and resolve the claims between and among them in accordance with the terms and conditions of the Agreement. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and made a part hereof.

## TERMS OF AGREEMENT

18.    The terms and conditions of the Agreement provide, *inter alia*, as follows:

A.    **Effective Date and Related Matters.** No later than five (5) business days after the execution and delivery of the Agreement, the Trustee shall file a motion in the Bankruptcy Court (the "Settlement Motion") to approve the Agreement under Fed. R. Bankr. P. 9019 and otherwise applicable bankruptcy law. The settlement shall be evidenced and implemented by the Agreement, the Settlement Motion, and the "Final Order" approving the Agreement. "Final Order" shall mean an order entered by the Bankruptcy Court which is unstayed and has become final and non-appealable. The "Effective Date" is a date upon which the order approving the Agreement becomes a Final Order.

B.    **Return of a Portion of the Funds.** Within five (5) business days after the Effective Date, the Trustee shall return to the Levins the Funds less the sum of $65,000.00, which the Trustee may retain for the benefit of Mr. Levin's bankruptcy estate, and bank service fees and premiums already paid by the Trustee prior to the return of the Funds to the Levins. The money returned to the Levins shall be known as the "Returned Funds," and the money retained by the Trustee in the amount of $65,000.00 shall be known as the

"Trustee Retained Funds."

C.      **No Exemption Claimed in the Trustee Retained Funds.** Mr. Levin shall claim no exemption in the Trustee Retained Funds.

D.      **The Trustee Shall Not File Claims.** The Trustee shall not file claims on behalf of creditors pursuant to Fed. R. Bankr. P. 3004.

E.      **Representations and Warranties.**

  (i)     Each of the Parties represents and warrants that they have carefully read the Agreement, the contents hereof are known to them, and that the Agreement is executed voluntarily and without duress or undue influence.

  (ii)    Each of the Parties represents and warrants that in executing the Agreement each rely solely upon their own judgment, belief, and knowledge, and on the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims, and that each has not been influenced to any extent whatsoever in executing the same by any representations or statements covering any matters made by any of the Parties or by any person representing them or any of them.

  (iii)   Each of the Parties represents and warrants that the persons and entities executing the Agreement have the legal authority to do so.

F.      **No Admission of Liability.** Nothing in this Agreement shall be deemed an admission of liability by any person or entity, whether party to this Agreement or otherwise.

G.      **Mutual Releases.**

  (i)     Upon the Effective Date, in consideration of the release provided from the Trustee, the Levins, on their own behalf and on behalf of their representatives, heirs, executors, and assigns, and their respective present or former agents, trustees, and attorneys, hereby irrevocably release, acquit, and forever discharge the Debtor's bankruptcy estate, the Trustee, and her agents, attorneys, advisers, consultants, and their successors and assigns from any and every claim, loss (whether consequential, direct or indirect), demand, liability, action, cause of action, bond claim, liability, debt, damage, controversy, agreement, trespass, judgment, execution, and demand of any nature whatsoever, whether in law or in equity, whether known or unknown, which the Levins have, or may acquire in the future in connection to the Account, the Funds, Returned Funds, and

4

Trustee Retained Funds; provided, however, nothing herein shall be deemed to release or discharge any obligation of the Trustee under the Agreement.

(ii)    Upon the Effective Date, in consideration of the release provided from the Levins, the Trustee, on her own behalf and on behalf of the Estate, its creditors, her representatives, heirs, executors, and assigns, and their respective present or former agents, trustees, and attorneys, irrevocably releases, acquits, and forever discharges the Levins and their agents, attorneys, advisers, consultants, and their successors and assigns, from any and every claim, loss (whether consequential, direct or indirect), demand, liability, action, cause of action, bond claim, liability, debt, damage, controversy, agreement, trespass, judgment, and execution, of any nature whatsoever, whether in law or in equity, whether known or unknown, which the Trustee has, or may acquire in the future in connection to the Account, the Funds, Returned Funds, and Trustee Retained Funds; provided, however, nothing herein shall be deemed to release or discharge any obligation of the Levins under this Agreement.

H.    **Bankruptcy Court Approval.**    The Agreement is contingent upon the entry of a final and non-appealable order of the Bankruptcy Court approving the Agreement. If the Agreement is not approved by the Bankruptcy Court, the Agreement shall be null and void and made without prejudice to the Parties who shall be returned to their original factual and legal positions.

*See*, Exhibit "A".

19.    The discussion of the terms contained in the Agreement is intended as a summary only and all parties in interest are encouraged to read the Agreement. To the extent that there are any discrepancies between the summary contained in this Motion and the terms contained in the Agreement, the terms of the Agreement shall control.

## RELIEF REQUESTED AND THE BASIS THEREFOR

20.    Federal Rule of Bankruptcy procedure 9019(a) provides "on motion by the Trustee and after notice and a hearing, the Court may approve a compromise or settlement. The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." *See*, *In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996).

21.     The Trustee seeks approval, pursuant to Bankruptcy Code § 105 and Fed. R. Bankr.

P. 9019, of the settlement of the claims among the Parties as set forth in the Agreement.

22.     In *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.*

*v. Anderson*, 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968), the Supreme Court instructed as to

those factors to be considered in determining whether to approve a settlement. The factors outlined

by the Supreme Court in Anderson have been uniformly summarized as follows:

    (a)     the probability of success in the litigation;

    (b)     the complexity of the litigation involved and the expense, inconvenience
and delay necessarily attending it;

    (c)     the difficulties, if any, to be encountered in the matter of collection; and

    (d)     the paramount interest of the creditors.

*See, Martin*, 91 F.3d at 393; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del.

1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Pennsylvania Truck Lines,*

*Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broadcasting*

*of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

23.     Bankruptcy Rule 9019 authorizes this Court to approve the Agreement entered into

by the Trustee. The decision whether to accept or reject a compromise is committed to the sound

discretion of the Bankruptcy Court, "which must determine if the compromise is fair, reasonable,

and in the interest of the estate." *See, Louise's*, 211 B.R. at 801. *See also, In re Neshaminy Office*

*Building Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

24.     The settlement need not be the best that the debtor could have achieved, but must

only fall "within the reasonable range of litigation possibilities." *See, In re Penn Central Transp.*

*Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court is not to substitute

its own judgment for that of the debtor. *See, Neshaminy Office Bldg.*, 63 B.R. at 803. Moreover,

it is not necessary for the court to conduct a truncated trial of the facts of the merits underlying the dispute. *See*, *Grant Broadcasting*, 71 B.R. at 396. *See also*, *In re A&C Properties*, 784 F.2d 1377, 1384 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986). Rather, the court need only "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *See*, *Neshaminy Office Bldg.*, 62 B.R. at 803, *quoting*, *In re W.T. Grant Co.*, 4 B.R. 53, 69 (S.D.N.Y. 1977).

25.    In the present case, the Agreement falls within the range of reasonableness for purposes of satisfying Fed. R. Bankr. P. 9019 criteria.

26.    Not only would litigation be costly and time consuming for the Trustee and the Debtor's estate, there are uncertainties in connection with the resolution of these claims including the potential for appeals, which could delay the final determination of these matters for a protracted period of time.

27.    The Trustee believes that, in light of the complexity and the expense of the dispute between the Parties, the Agreement is in the best interest of the Trustee, the Debtor's estate and the creditors.

28.    Specifically, the Trustee believes that the Trustee Retained Funds in the amount of $65,000.00 will provide for a meaningful distribution to the Debtor's unsecured creditors as the Debtor's unsecured creditor pool is in the aggregate amount of $56,297.12. The Trustee's Declaration in Support of the Motion is attached hereto as Exhibit "B" and made a part hereof.

## NOTICE

29.    This Motion and Notice of this Motion have been provided to (i) the Office of the United States Trustee for the Eastern District of Pennsylvania; (ii) the Debtor's counsel; (iii) the Levins' counsel and (iv) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002.

In addition, Notice of this Motion has been provided to all of the Debtor's creditors. The Trustee submits that such notice is proper and adequate and no further notice is necessary or required.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests the entry of an Order (a) approving the Agreement and (b) granting such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**KARALIS PC**


By:___/s/ Robert W. Seitzer_____
    ROBERT W. SEITZER
    1900 Spruce Street
    Philadelphia, PA 19103
    (215) 546-4500
    rseitzer@karalislaw.com

    *Attorneys for the Trustee*

Dated: November 13, 2025