# **EXHIBIT "A"**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

Lynn E. Feldman, Chapter 7 Trustee for the Estate of Murray D. Levin (the "Trustee"), on the one hand, and Murray D. Levin and Michele Levin (the "Levins"), on the other hand (collectively, the "Parties"), hereby stipulate and agree as follows:

## BACKGROUND

A.   In early May 2024, the Levins opened a brokerage account with Charles Schwab & Co., Inc. (the "Account"), and placed into that Account certain funds stemming from a sale of real estate that the Levins held as tenants by the entirety.

B.   In or around early May 2025, the Levins changed the name of the Account from "MICHELE ELLYN LEVIN & MURRAY LEVIN JT TEN" to "MICHELE ELLYN LEVIN & MURRAY LEVIN TEN BY ENT."

C.   On May 8, 2025 (the "Petition Date"), Mr. Levin filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), docketed as *In re Murray D. Levin*, Chapter 7 Case No. 25-11829-DJB (the "Bankruptcy Case").

D.   On May 9, 2025, the Trustee was appointed trustee for the Estate of Mr. Levin, which appointment remains in effect.

E.   In the weeks that followed, Mr. Levin filed various amended versions of Schedule C of his bankruptcy petition. In these filings, he claimed the funds in the Account as exempt.

F.   On July 9, 2025, counsel for the Trustee sent to Mr. Levin's bankruptcy counsel a letter asserting, among other things, that the Levins had held the money in the Account as joint tenants, and that the Levins had committed a fraudulent transfer by renaming the Account (the "July 9 Letter").

4491611.2

G.  On July 14, 2025, Mr. Levin, acting on the advice of his bankruptcy counsel, caused to be wired to the Trustee half of the total amount of money then in the Account, $184,427.89 (the "Funds").

H.  Shortly thereafter, the Levins retained additional counsel.

I.  On July 31, 2025, counsel for the Levins sent the Trustee's counsel a letter (the "July 31 Letter") that contested the legal bases of the July 9 Letter.

J.  The July 31 Letter noted, among other things, that the Levins at all times held the money in the Account as tenants by the entirety and that the renaming of the Account had no effect on the legal status of the money in the Account.

K.  The July 31 Letter concluded by requesting a return of the Funds.

L.  In subsequent letters exchanged among counsel, the Parties disputed these points and others.

M.  Ultimately, the Trustee declined to return the Funds and the Levins maintained their legal right to the Funds.

## AGREEMENT

**NOW, THEREFORE,** the foregoing background is deemed incorporated herein and made a part hereof and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties to this Agreement, intending to be legally bound, hereby further covenant and agree as follows:

1.  **Effective Date and Related Matters.** No later than five (5) business days after the execution and delivery of this Agreement, the Trustee shall file a motion in the Bankruptcy Court (the "Settlement Motion") to approve this Agreement under Fed. R. Bankr. P. 9019 and otherwise applicable bankruptcy law. This settlement shall be evidenced and implemented by this Agreement, the Settlement Motion, and the "Final Order" approving this Agreement. "Final

4491611.2

Order" shall mean an order entered by the Bankruptcy Court which is unstayed and has become final and non-appealable. The "Effective Date" is a date upon which the order approving this Agreement becomes a Final Order.

2. **Return of a Portion of the Funds.** Within five (5) business days after the Effective Date, the Trustee shall return to the Levins the Funds less the sum of $65,000.00, which the Trustee may retain for the benefit of Mr. Levin's bankruptcy estate, and bank service fees and premiums already paid by the Trustee prior to the return of the Funds to the Levins. The money returned to the Levins shall be known as the "Returned Funds," and the money retained by the Trustee in the amount of $65,000.00 shall be known as the "Trustee Retained Funds."

3. **No Exemption Claimed in the Trustee Retained Funds.** Mr. Levin shall claim no exemption in the Trustee Retained Funds.

4. **The Trustee Shall Not File Claims.** The Trustee shall not file claims on behalf of creditors pursuant to Fed. R. Bankr. P. 3004.

5. **Representations and Warranties.**

    (a) Each of the Parties hereto represents and warrants that they have carefully read this Agreement, the contents hereof are known to them, and that this Agreement is executed voluntarily and without duress or undue influence.

    (b) Each of the Parties hereto represents and warrants that in executing this Agreement each rely solely upon their own judgment, belief, and knowledge, and on the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims, and that each has not been influenced to any extent whatsoever in executing the same by any representations or

4491611.2

statements covering any matters made by any of the Parties or by any person representing them or any of them.

(c) Each of the Parties hereto represents and warrants that the persons and entities executing this Agreement have the legal authority to do so.

6. **No Admission of Liability.** Nothing in this Agreement shall be deemed an admission of liability by any person or entity, whether party to this Agreement or otherwise.

7. **Mutual Releases.**

(a) Upon the Effective Date, in consideration of the release provided herein from the Trustee, the Levins, on their own behalf and on behalf of their representatives, heirs, executors, and assigns, and their respective present or former agents, trustees, and attorneys, hereby irrevocably release, acquit, and forever discharge the Debtor's bankruptcy estate, the Trustee, and her agents, attorneys, advisers, consultants, and their successors and assigns from any and every claim, loss (whether consequential, direct or indirect), demand, liability, action, cause of action, bond claim, liability, debt, damage, controversy, agreement, trespass, judgment, execution, and demand of any nature whatsoever, whether in law or in equity, whether known or unknown, which the Levins have, or may acquire in the future in connection to the Account, the Funds, Returned Funds, and Trustee Retained Funds; provided, however, nothing herein shall be deemed to release or discharge any obligation of the Trustee under this Agreement.

(b) Upon the Effective Date, in consideration of the release provided herein from the Levins, the Trustee, on her own behalf and on behalf of the Estate, its creditors, her representatives, heirs, executors, and assigns, and their

4491611.2

respective present or former agents, trustees, and attorneys, irrevocably releases, acquits, and forever discharges the Levins and their agents, attorneys, advisers, consultants, and their successors and assigns, from any and every claim, loss (whether consequential, direct or indirect), demand, liability, action, cause of action, bond claim, liability, debt, damage, controversy, agreement, trespass, judgment, and execution, of any nature whatsoever, whether in law or in equity, whether known or unknown, which the Trustee has, or may acquire in the future in connection to the Account, the Funds, Returned Funds, and Trustee Retained Funds; provided, however, nothing herein shall be deemed to release or discharge any obligation of the Levins under this Agreement.

8. **Bankruptcy Court Approval.** This Agreement is contingent upon the entry of a final and non-appealable order of the Bankruptcy Court approving this Agreement. If this Agreement is not approved by the Bankruptcy Court, this Agreement shall be null and void and made without prejudice to the Parties who shall be returned to their original factual and legal positions.

9. **Expenses.** The Parties agree that each shall bear their own costs and attorneys' fees incurred in connection with the disputes referred to in this Agreement and the negotiation and preparation of this Agreement.

10. **Binding Effect.** This Agreement shall be binding upon the Parties and their respective heirs, successors, and assigns.

11. **Modification.** No term or provision of this Agreement may be varied, changed, modified, waived, discharged, or terminated orally, but only by an instrument in writing signed by

the Party against whom the enforcement of the variation, change, modification, waiver, discharge, or termination is sought.

12. **Documents.** The Parties are authorized and directed to execute and deliver all instruments and documents necessary or appropriate to consummate this Agreement.

13. **Choice of Law.** This Agreement is to be interpreted according to the laws of the Commonwealth of Pennsylvania. Any dispute arising over the meaning, application or interpretation of this Agreement shall be submitted to the Bankruptcy Court for resolution.

14. **Entire Agreement.** This Agreement constitutes the entire agreement between or among the Parties pertaining to the subject matter hereof, and there are no terms other than those contained herein.

15. **Severability.** If any provision of this Agreement shall be held invalid under any applicable law, such invalidity shall not affect any other provision of this Agreement that can be given effect without the invalid provision and, to this end, the provisions hereof are severable.

16. **Waiver.** A breach of any provision of this Agreement can be waived only by a writing signed by the non-breaching party. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof. This Agreement may be amended only by a written agreement executed by the Parties.

17. **Headings.** The headings of any paragraph of this Agreement are for convenience only and shall not be used to interpret any provision of this Agreement.

18. **Further Action.** The Parties hereto agree to execute promptly upon request any and all other documents and instruments necessary to effectuate the terms of this Agreement.

19. **Counterparts.** This Agreement may be executed in counterparts and by facsimile or by portable document format ("PDF") and when each of the Parties has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and all counterparts taken

together shall constitute one and the same agreement, which shall be binding and effective as to all Parties. Facsimile and PDF copies shall be deemed original.

**[SIGNATURE PAGE TO FOLLOW]**

4491611.2

**IN WITNESS WHEREOF**, the Parties hereto, by and through their respective counsel or authorized representative, have executed this Agreement as of the date set forth below.

                      **KARALIS PC**

Dated: November \_\_, 2025      By: _____
                                      Robert W. Seitzer, Esquire
                                        1900 Spruce Street
                                        Philadelphia, PA 19103
                                        (215) 546-4500
                                        rseitzer@karalislaw.com

                                        *Attorneys for the Trustee*

                                        **HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

Dated: November 12, 2025      By: _____
                                        Matthew A. Hamermesh, Esquire
                                        One Logan Square, 27th Floor
                                        Philadelphia, PA 19103-6933
                                        (215) 496-7054
                                        mhamermesh@ha gley com

                                        *Attorneys for Murray D. Levin and Michele Levin*

4491611.2